IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br><br>Vs.<br><br>EDUARDO CRUZ RIVERA<br>Defendant | Criminal No. 16-672(GAG) |

**MOTION TO SUPPRESS UNDER VARIOUS DOCTRINES**

**COMES NOW** Eduardo Cruz Rivera, and through the undersigned attorney, respectfully alleges and prays:

**INTRODUCTION**

1) Mr. Eduardo Cruz Rivera was on October 25, 2016, in a house in So. El Jacho, Barrio Buena Vista. A state search warrant was obtained by the Bayamón Narcotics Division in order to search said residence.

2) In the state search warrant it is alleged by Agent Juan Amaro Sierra, 28388, that he made observations on three different dates. That is September 28, October 4, and October 12. There is a picture that is on the Search Warrant which presumably is taken from where the agent alleges he has visibility.

3) Our first claim during this suppression hearing is that the agent did not have permission to make the observations he alleges he made since they were made from private property. No permission was asked from the owners according to our investigation.

4) Our second claim relates to the chain of custody since the amounts allegedly occupied do not comport to the amount received by the laboratory.

5) Our third claim relates to the suppression of alleged statements made by Mr. Cruz-Rivera.

**ISSUES OF LAW REGARDING THE OBSERVATIONS OF THE AGENT**

From the outset it is important to note that "it has long been settled that objects falling in the plain view of the officer **who has a right to be in the position to have that view** are subject to seizure and may be introduced into evidence. Harris v. US, 390 US 234 (1968). Our emphasis.

In the case at bar, we asked the government for the position of the agents when making the search warrant. As expected, the government answered it was confidential. Nevertheless, the search warrant comes with a picture of the residence to be searched. The only place that this picture could be taken is from private property. In fact, observations could only be made from private property.

Thus, we sent the private investigator hired for this matter, Mr. Benny Soto. After investigating all possible angles of observation, Mr. Soto concluded that there was no possibility of making the corresponding observations unless the agents were in private property. To that extent a signed statement under penalty of perjury is being submitted with this motion. Attachment 1.

As the affidavit explains the only way to enter into this plot of land is through a rural street (*camino*). The residence is surrounded by other plots of land with its respective residences. These residences are only accessible through other roads, specifically Road 827 interior and Road 829.

As the affidavit explains Mr. Soto interviewed all neighbors of the residence and all answered negatively relating to any permission given to any police officer in order to make observations. After examining all possible areas of the surveillance the only place the agents could have seen what they alleged in the search warrant affidavit is from the plot of land belonging to the succession of family Sánchez-Reyes, which is a private plot of land.

Similarly, the other property searched in Road 167 is very difficult to make observations since it only has access through one place and anyone in this area would be detected. The house has a fence which impedes visibility.

**ISSUES REGARDING THE LAB REPORT**

There are a few issues regarding the lab report which we must bring to the attention of the Court. The first is that the amount of drugs occupied according to the Receipt of Property given by Homeland Security state agents do not match the amount of drugs delivered to the laboratory. Secondly, there is no relation in this lab reports regarding substance purity and amount of pure substance. This is very important particularly with crack cocaine.

The third issue is that the analysis does not comport to crack cocaine. According to the Guidelines cocaine base "for the purposes of the guideline, means "crack".

3

"Crack" is the street name of a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form. "

The fourth issue is that some 9 grams of cocaine appear in the lab report that does not comport to the state or federal property receipt given by the agents. We discuss each issue separately.

1) The amount of drugs in the lab reports do not match the property receipts given by state and federal authorities.

The property receipts given by state agents and federal agents (attachment 2 and 3) reflect the following amounts:

   a. 695 veils of apparent cocaine
   b. 564 veils of apparent crack
   c. 2kg of apparent cocaine

   It stems from the lab report that they received on November 30, 2016 the following items:

a. 693 veils of apparent cocaine

b. 565 veils of apparent crack

c. 1875.7 grams of apparent cocaine

d. 9 grams of cocaine hidrochloride

A cursory look at the evidence occupied and the evidence analyzed finds contradiction. First the apparent veils of cocaine do not match. Moreover, there was

more alleged crack tested than what it was occupied by state and federal authorities. This is preposterous as it suggest a tampering with the evidence.

Notice that also there are 9 grams of cocaine missing. Said grams of cocaine do not appear in the state or federal receipt of property. We submit again, that either this were not the alleged drugs occupied or that there was tampering with the evidence.

Similarly, 130 grams are missing from a substance which the agents thought it was cocaine. Nevertheless, it turned out to be lidocaine. However, it is important to note that 130 grams is an 1/8 of a kilo which has a street value of approximately $3,000.00.

2) A cursory look at the lab reports shows that they are lacking substance purity and amount of pure substance. These parts of the lab report are usually filed out. However, in these labs they are missing.

3) The lab analysis do not comport to crack cocaine. The Guidelines manual defines crack cocaine as the street name of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form. However, it does not stem from the lab report that these 26 grams contained sodium bicarbonate. They might be rock like cocaine made for free basin. We must stress that we are in a criminal court and definitions are imperative as part of the legality principle. These 26 grams, as per the lab report, do not comport to the definition of crack cocaine. Therefore, they cannot be crack cocaine.

4) There are added amounts which do not appear in either the state or federal receipts of property. As intimated early, there is more substance in some instances in the lab report than that reflected in the property receipts. Specifically, there is one more alleged veil of alleged crack and there are 9 grams of cocaine which appear in the lab report which do not appear in the property receipt. There is no feasible explanation for this discrepancy, and only suggests that either the evidence was tampered or it does not correspond to the defendant in the case at bar.

**STATEMENTS ALLEGEDLY MADE BY DEFENDANT MUST BE SUPPRESSED**

As it is well known, in the landmark case of <u>Miranda v. Arizona</u>, 384 US 436 (1966), the Supreme Court broadened the right against self-incrimination to cover virtually all custodial police interrogations. Furthermore, the Supreme Court established strict procedural rules to avoid violation of the privilege against self-incrimination.

In order for <u>Miranda</u> to apply the suspect must be in custody. However, <u>Miranda</u> warnings must be read to a suspect before interrogation. The remedy for a violation of this Rule is the suppression of all materials.

In the case at bar, some statements were obtained from defendant in a post arrest interview. According to the notes of said interview, as it is reflected on the right hand corner of the notes of the interview, said interview was made on 10/25/2016, and at 18:58. Moreover, it is also established in the notes from said interview that Sargeant Vázquez and ICE Agent Bustelo participated of the interview. <u>See</u> attachment 7. Thus, the requisite that the suspect be in custody is complied with.

A copy of signed Miranda warnings was provided in Discovery. Said document establishes in its left hand corner that it was taken at 19:00. Therefore, the Miranda warnings were made after the custodial interrogation. Accordingly, said statements must be suppressed.

## CONCLUSION

In this motion we have brought three different issues and each has a different level of consequence. The first issue we bring to the attention of the Court is the lack of permission by state agents to make the requisite observation for the search warrant. If the Court agrees with the undersigned then all evidence gathered as a result of this search warrant must be suppressed.

The second issue we bring to the attention of the Court is the disparity in the receipts of property and the drug analyzed as reflected in the lab reports. More cocaine was analyzed, according to the lab reports, than what it appears in the property receipt redacted by the agents at the state and federal level. Moreover, a substance which the agents thought was cocaine was missing approximately 130 grams. The substance turned out to be lidocaine and not cocaine hydrochloride. Nevertheless, the Court must note that this has a street value of around $3,000.00. We submit that there must be an inference that someone outside of the control of defendant, and while the evidence was in the possession of the government, tampered with the evidence.

The final issue we bring to the Court is the need for the suppression of the statements made by Mr. Eduardo Cruz-Rivera. Note that the notes of the agents who

7

interviewed Mr. Rivera while in custody established 18:58 as the time of the interview. Nevertheless, 19:00 is established as the time Mr. Cruz-Rivera signed the <u>Miranda</u> warnings. Accordingly, the statements were taken before the <u>Miranda</u> warnings were made.

**WHEREFORE** we respectfully request from this Court to grant the present motion and suppress all evidence in the case at bar for the reasons stated above.

**RESPECTFULLY SUBMITTED.**

**In San Juan, Puerto Rico, on this 26 of July 2017.**

**CERTIFICATION:** I filed the foregoing motion through the EFS of the Court which will send automatic notification of said filing to all attorneys of record.

**s/Jorge Luis Armenteros-Chervoni**
[armenteroslaw@gmail.com](mailto:armenteroslaw@gmail.com)
**US District Court #214614**
**Cond. Galeria, Ste. 202**
**201 Arterial Hostos**
**San Juan, PR 00918**
**787 751-7634**